## ROBERT HALSTEAD *vs.* JAMES GAY.

APPEAL FROM DECISION OF PRESTON, J., IN THE INTERMEDIARY COURT OF OAHU.

SPECIAL TERM, MARCH 1889.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

Land now above high water mark, which has been formed by imperceptible accretion against the shore line of a grant, has become attached by the law of accretion to the land described in the grant and belongs to the littoral proprietor.

OPINION OF THE COURT, BY McCULLY, J.

The case comes by appeal of the defendant upon matters of law from the decision of Mr. Justice Preston sitting as "Intermediary Court," who rendered the following opinion:

This is an appeal from a decision of David Dayton, Esq., Police Magistrate of Honolulu, whereby he gave judgment in favor of the plaintiff for one dollar damages and costs in an action of trespass upon land of the plaintiff, as particularly set forth in Royal Patent 276, dated the 30th day of May, 1851.

The following agreement was entered into by counsel on behalf of their respective clients: "The said parties hereby mutually agree that for all the purposes of the said cause, and of the judgment to be made, the plaintiff's exclusive possession

of the land on which the alleged trespass was committed was at the date thereof constructive only, and based upon the title claimed by the plaintiff herein.

" 2d.   That the land on the seashore, makai of the limit of the land described in Royal Patent 276, has, by imperceptible accretion, become attached to and a part of the mainland described in said patent."

Upon this statement I have to give my decision.   I have no doubt as to the law on the subject.

Land formed by alluvion, or the gradual and imperceptible accretion from the water, and land gained by reliction, or the gradual and imperceptible recession of the water, belong to the owner of the contiguous land to which the addition is made. See *Rex vs. Yarborough*, 3 Barn and Cr., 91; *Giffard vs. Yarborough*, 5 Bing, 163; Gould on Waters, 284; Angell on Tide Waters, 249; Woolrych on Waters, 57; Phear on Rights of Water, 35; Coulson & Forbes on the Law of Waters, 22; Washburn on Real Property, vol. 3, p. 55; and the various cases and authorities therein cited.

I therefore find that the land upon which the trespass was committed belonged to the plaintiff, and affirm the decision of the lower Court with costs.

## BY THE COURT.

In this appeal defendant's counsel does not seek to controvert the law as cited and declared in the Court below, but claims that the description and bounds given in the patent do not permit the owner of the patented land to claim the rights of a riparian or littoral proprietor, the land and sea being claimed to be not coterminous.

In determining this objection, it will be useful to set forth more fully the terms of the land grant in the Hawaiian language, and to give our translation and exposition of the Hawaiian phrases used to describe the boundary in question.

The lot is a long parallelogram, the upper end lying along a certain government road, and running seaward.

The first course is of 68 chains, "a hiki i kahakai," the third course, being on the opposite side of the strip, is of 66 chains, "a hiki i kahakai;" the fourth and last is "ma kahakai a hiki i ka hope o ka holo mua ana," without distance given.

Kahakai is compounded of the words kaha and kai. Kaha means primarily a scratch, or mark. Kai means the sea, or salt water. Kahakai, then, means the mark of the sea, the junction or edge of the sea and land. See Andrew's Hawaiian Dictionary. They are common Hawaiian words, known in this signification by all who understand the language. By extension of the term beyond its strictest etymological meaning, it means the seashore, the sand of the beach, and still further the region of country bordering on the sea. We hold that in the description of this survey it means the high-water mark on the sea beach. "A hiki i kahakai" is then to be translated "reaching to high-water mark," and "ma kahakai a hiki i ka hope o ka holo mua ana" is rendered "along the high-water mark to the end of the first course." The form of the survey is peculiar. Starting from one corner on the road it gives a course and distance to the sea; then returning to the initial corner it gives the course and distance along the road, and thence course and distance to the sea, and closes the survey by giving the kahakai line without stating what the course or distance may be to the point where the first course strikes kahakai.

The intention is clear to grant to the sea, and make it coterminous with it.

In this kingdom the average rise and fall of the tide is two feet. Where the coast is of rock, high and low water are on the same line. Where it is of sand, the difference between high and low water is generally too little and too ill-defined and shifting to be taken into account.

Section 387 of the Code, page 92 Compiled Laws, seems to imply that the proprietorship of land adjacent to the beach extended to low water mark, for it enacts that the fisheries for a mile from low water mark are the property of the owners of the lands adjacent and appurtenant, thus making the boundary between the land and the fishery to be the low water line.

But whether some land between present high and low water has been trespassed upon is not the question in this case, but it is whether land now above high-water mark, which has been formed by imperceptible accretion against the shore line existing at the date of the survey and grant, has become attached by the law of accretion to the land described in the grant. By the definitions we have given, it follows that the plaintiff has the rights of a littoral proprietor, and that the accretion is his.

The judgment of the Court below is affirmed with costs.

*W. R. Castle*, for plaintiff.

*A. S. Hartwell*, for defendant.